**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SAGE TITLE GROUPS, LLC | : | |
| d/b/a SAGE PREMIER SETTLEMENTS, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 16-03 |
| | : | |
| LILLIE E. KERSEY, MERRITT KERSEY, | : | |
| MICHAEL J. KERSEY, MORRIS F. KERSEY, | : | |
| and MONA LISA KERSEY a/k/a MONA LISA | : | |
| KERSEY-MONTEITH, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                    **FEBRUARY 17, 2017**

Presently before the Court is Defendants, Mona Lisa Kersey-Monteith ("Mona"),

Michael Kersey ("Michael"), and Morris Kersey's ("Morris") (collectively, "Siblings") Motion

for Summary Judgment, Defendant, Merritt Kersey's ("Merritt"), both Individually and Executor

of the Estate of Lillie E. Kersey ("Lillie"), Motion for Summary Judgment, Siblings' Response

in Opposition to Merritt's Motion, and Merritt's Response in Opposition to Siblings' Motion.

For the reasons set forth below, Siblings' Motion is granted and Merritt's Motion is denied.

**I.        BACKGROUND**

Pursuant to Federal Rule of Civil Procedure 22, Sage Title Group, LLC ("Sage") commenced

this diversity action by filing its Complaint for Interpleader ("Interpleader Complaint") on

January 4, 2016.  (Doc. No. 1.)  The Interpleader Complaint alleges that on or about May 15,

2014, Mona, Michael, Morris, Lille, and Merritt (collectively, "Defendants") were the sellers of

real property located at 14 Isabella Lane, Glen Mills, Pennsylvania (the "Property").[1]  (Compl. ¶ 11.)  Sage acted as the title agent and conducted the real estate closing for the sale, which occurred on May 15, 2014 (the "Transaction").  (Id. ¶¶ 11-12.)  At the closing, Sage issued a check representing the net proceeds of the sale, in the amount of $267,499.69, jointly payable to all Defendants.  (Id. ¶ 13.)  Soon after settlement, Sage became aware that its proceeds check had not been negotiated by Defendants and remained uncashed.  (Id. ¶ 14.)

Sage was eventually alerted to a dispute between Defendants regarding their respective distributive shares.  (Id. ¶ 15.)  The Property was originally acquired by Lillie E. Kersey and her husband, Frederic F. Kersey ("Frederic") (collectively, the "Parents") by deed dated November 2, 1972.  (See Merritt's Mot. for Summ. J. at 2-3.)  The Parents added their two oldest children, Michael and Morris, as co-owners in the Property via a deed dated August 11, 1987 ("1987 Deed").  (Id. at 3.)  In the 1987 Deed, the Parents conveyed the property to the following Grantees:

> Fredderic F. Kersey and Lillie E. Kersey, his wife, tenants by the entireties. Michael J. Kersey and Morris F. Kersey, to the whole as joint tenants with the rights of survivorship.

(Id. at 5, Ex. B.)

The current dispute pertains to the 1990 Deed ("1990 Deed"), which added the two youngest siblings, Mona and Merritt; thus, conveying an interest in the Property to the Parents and Michael, Mona, Merritt, and Morris (collectively, the "Children").  The 1990 Deed recorded June 27, 1990, had the following named Grantees:

> Frederic F. Kersey and Lillie E. Kersey, his wife, tenants by the entireties. Michael J. Kersey, Morris F. Kersey, Mona Lisa Kersey, and Merritt Kersey to the whole as joint tenants with right of survivorship.

---

[1] For background purposes, it is worth understanding that Lillie is the mother of the four other defendants.

(<u>Id.</u> at 5, Ex. A.)

In this lawsuit, we are charged with giving a meaning to this language of the 1990 Deed. Merritt suggests that, absent any other admissible evidence, the parties used the period in the conveyance between the Parents and the Children to create two distinct classes of ownership, where the Parents[2] owned fifty (50%) percent, and the Children owned the other fifty (50%) percent split equally among them.  (<u>Id.</u> at 13-17.)  On the other hand, Siblings claim that the Deed conveyed an equal 20% interest to each of the five tenants.  (<u>See</u> Siblings' Mot. for Summ. J. at 2-4.)

## II.   <u>STANDARDS OF LAW</u>

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law"  <u>See</u> <u>Hines v. Consol. Rail Corp.</u>, 926 F.2d 262, 267 (3d Cir. 1991).  The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986).  The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "A fact is material if it could affect the outcome of the suit after applying the substantive law.  Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'"  <u>Compton v. Nat'l League of Prof'l Baseball Clubs</u>, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

---

[2] Neither party disputes that the 1990 Deed created a tenancy by the entireties in the portion of the Property held by Frederic and Lillie that passed completely to Lillie upon Frederic's passing.  Merritt, as the sole heir under a recently drafted will, takes both his share as a tenant and the share held by Lillie's estate.  (<u>See</u> Siblings' Mem. In Opp. to Merritt's Mot. for Summ. J. at 3 n.2.)

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992).  "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

III.   **DISCUSSION**

   **A.  Property Interests at Issue**

There are three forms of ownership of real estate property at issue in this case.  We will provide a brief background on each of them before analyzing the facts of the case.

   ***1.  Tenancy in Common***

"[T]enants in common . . . own and possess in equal shares an undivided interest in the whole property." In re Engel's Estate, 198 A.2d 505, 507 (Pa. 1964).   In other words, "there is unity of possession but separate and distinct titles." In re Estate of Quick, 905 A.2d 471, 474 (Pa. 2006).  Further, "tenants in common are presumed to hold equal shares in the property, and this presumption stands until it is rebutted by competent evidence." Williams v. Fund of $1230.10, 116 A.2d 266, 270 (Pa. 1955) (citations omitted).

### 2.  *Joint Tenancy with Right of Survivorship*

Joint tenancy with right of survivorship ("JTWROS") is defined as follows:

> When two or more persons hold property as JTWROS [joint tenancy with right of survivorship], title to that property vests equally in those persons during their lifetimes, with sole ownership passing to the survivor at the death of the other joint tenant[s]. . . . The essence of a JTWROS is the four unities: interest, title, time, and possession.  A JTWROS must be created by express words or by necessary implication but there are no particular words which must be used in its creation.

Quick, 905 A.2d at 474 (citations and footnote omitted).

### 3.  *Tenancy by the Entireties*

"A tenancy by the entireties is a form of co-ownership . . . by husband and wife, by which together they hold title to the whole and right of survivorship, so that, upon death of either, the other takes whole to the exclusion of the deceased's heirs."  Hill v. Dep't of Corrs., 64 A.3d 1159, 1165 n.4 (Pa. Commw. Ct. 2013) (citing Johnson v. Johnson, 908 A.2d 290, 295 (Pa. Super. Ct. 2006)).  One of the essential characteristics of tenancy by the entireties is that "each spouse is seized *per tout et non per my*, i.e., of the whole or the entirety and not of a share, moiety or divisible part."  Johnson, 908 A.2d at 295 (quoting In re Gallagher's Estate, 43 A.2d 132 (Pa. 1945) (citations omitted)).   There is a presumption of tenancy by the entireties ownership "when property . . . is placed in the names of husband and wife."  Margarite v. Ewald, 381 A.2d 480, 482 (Pa. 1977) (citing, *inter alia*, Heatter v. Lucas, 80 A.2d 749 (Pa. 1951)); accord Plastipak Packaging, Inc. v. DePasquale, 937 A.2d 1106, 1111 (Pa. Super. Ct. 2007)).

**B.  Interpretation of Deeds Under Pennsylvania[3] Law**

The Pennsylvania Superior Court ("Superior Court") has advised courts on the proper

procedures in construing a deed:

> When construing a deed, a court's primary object must be to
> ascertain and effectuate what the parties themselves intended.  The
> traditional rules of construction to determine that intention involve
> the following principles.  First, the nature and quantity of the
> interest conveyed must be ascertained from the deed itself and
> cannot be orally shown in the absence of fraud, accident or
> mistake.  We seek to ascertain not what the parties may have
> intended by the language but what is the meaning of the words
> they used.  Effect must be given to all the language of the
> instrument, and no part shall be rejected if it can be given a
> meaning.  If a doubt arises concerning the interpretation of the
> instrument, it will be resolved against the party who prepared it. . .
> . To ascertain the intention of the parties, the language of a deed
> should be interpreted in the light of the subject matter, the apparent
> object or purpose of the parties and the conditions existing when it
> was executed.

Consol. Coal Co. v. White, 875 A.2d 318, 326-27 (Pa. Super. Ct. 2005) (citations omitted).

A deed is treated as a contract for purposes of interpretation.  See Baney v. Eoute, 784

A.2d 132, 136 (Pa. Super. Ct. 2001) ("The terms of the instrument conveying the [property]

interest are interpreted by applying general principles of contract law.").  In accordance with

these general rules, "words of a contract are to be given their ordinary meaning."  Kripp

v. Kripp, 849 A.2d 1159, 1163 (Pa. 2004).

The Superior Court has held:

> It is firmly settled that the intent of the parties to a written contract
> is contained in the writing itself.  When the words of a contract are
> clear and unambiguous, the intent is to be found only in the
> express language of the agreement.  Clear contractual terms that
> are capable of one reasonable interpretation must be given effect
> without reference to matters outside the contract.  Where the

---

[3] Pennsylvania law applies because federal courts sitting in diversity cases must apply the substantive law of the
states where they sit.  See Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).

contract terms are ambiguous and susceptible of more than one
reasonable interpretation, however, the court is free to receive
extrinsic evidence, i.e., parol evidence, to resolve the ambiguity.

Krizovensky v. Krizovensky, 624 A.2d 638, 642 (Pa. Super. Ct. 1993) (citations omitted).  If a

term is not otherwise defined in the deed or in the law, the ordinary dictionary meaning of that

term is to be applied.  See Genaeya Corp. v. Harco Nat'l Ins. Co., 991 A.2d 342, 347 (Pa. Super.

Ct. 2010) ("Words of common usage . . . are to be construed in their natural, plain, and ordinary

sense, and a court may inform its understanding of these terms by considering their dictionary

definitions." (internal quotation marks omitted)).

### C.  Interpretation of the 1990 Deed[4]

As set forth above, the Grantees under the 1990 Deed are "Frederic F. Kersey and Lillie

E. Kersey, his wife, tenants by the entireties.  Michael J. Kersey, Morris S. Kersey, Mona Lisa

Kersey and Merritt Kersey, to the whole as joint tenants with rights of survivorship."  (See

Merritt's Mot. for Summ. J., Ex. A.)  The habendum clause of the 1990 Deed reads: "As to

husband-and-wife Tenants by Entireties and as to parents and children as Joint Tenants with the

Right of Survivorship."  (See id.)

Neither party disputes that the 1990 Deed created a tenancy by the entireties in the

portion of property held by the Parents.  (See Siblings' Mem. In Opp. to Merritt's Mot. for

Summ. J. at 2.)  The question before us today is the proportional ownership or tenancy created

---

[4] As an initial matter, we will not consider the affidavits signed by Michael and Morris when we interpret the 1990
Deed since neither party has alleged any fraud, accident, or mistake in the creation of the deed.  See White, 875
A.2d at 326 ("[T]he nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot
be orally shown in the absence of fraud, accident or mistake.")  Additionally, all of Defendants have entered into a
stipulation that the intent of the parties must be derived solely from deed interpretation.  (See Merritt's Mot. for
Summ. J., Ex. B) ("[T]he case will be resolved by Judge Kelly on Deed interpretation only.")).

among the Parents, as one entity,[5] and the Children as four separate entities.  The 1990 Deed has

two possible interpretations: 1) a joint tenancy was created for five equal tenants each holding a

20% interest; or, 2) two distinct classes of ownership were created where the Parents held a 50%

interest as tenants by the entireties and the Children held the remaining 50% interest, split

equally among them, as joint tenants.  We find that the former interpretation is the most

appropriate given the express language of the 1990 Deed.

> We find that the 1990 Deed created a tenancy by the entireties held by the Parents that is

a part of a joint tenancy with the Children.  Merritt contends that the 1990 Deed contains no

language that rebuts the presumption of there being a tenancy in common.  (See Merritt's Mem.

In Opp. to Sibling's Mot. for Summ. J. at 7-8.); see also Zomisky v. Zamiska, 296 A.2d 722, 723

(Pa. 1972) (holding that "conveyance or devise carries with it no right of survivorship unless

clearly expressed, and in the absence of a clearly expressed intent to the contrary, the

conveyance or devise creates not a joint tenancy, but a tenancy in common").  Therefore, Merritt

suggests that we find that:

> Frederic and Lillie Kersey were tenants by the entireties of a 50
> percent share of the Property and that the children were tenants in
> common with respect to the remaining 50 percent share of the
> Property. "As to the whole," the two groups were joint tenants with
> rights of survivorship.

(Id. at 8.)

> We disagree with Merritt as the 1990 Deed states: "Michael J. Kersey, Morris S. Kersey,

Mona Lisa Kersey and Merritt Kersey, to the whole as joint tenants with rights of survivorship."

---

[5] "Pennsylvania . . . chooses to retain the common law concept of tenancy by the entireties, which views a husband and wife as a single entity."  Constitution Bank v. Olson, 620 A.2d 1146, 1153-54 (Pa. Super. Ct. 1993) (citations omitted).

This language is clearly sufficient to rebut the presumption against joint tenancy.[6]  See, eg.,

Zomisky, 296 A.2d at 724 (holding that the "words 'Joint tenants' in connection with the

operative words 'with the right of survivorship' removes the ambiguity and makes it clear that

the intention of the parties was to create a joint tenancy").  If we were to rule that the 1990 Deed

created a tenancy in common, as suggested by Merritt, we would be rendering the express

language of the Deed meaningless.  Merritt asserts that the language "as to the whole" shows a

contrary intent to create a joint tenancy.  We disagree with this contention as, under

Pennsylvania law, "[e]ach joint tenant holds an undivided share of the whole estate."  General

Credit Co. v. Cleck, 609 A.2d 553, 556 (Pa. Super. Ct. 1992) (citations omitted).

     Since we find that there was a clear intent to create a joint tenancy among the Grantees,

we must now decide whether the four required unities of interest, title, time, and possession are

present in order to create a joint tenancy under Pennsylvania law.  See Quick, 905 A.2d at 474.

"Unity of time requires that the interests of the tenants vest at the same time.  Unity of title

requires the tenants to have obtained their title by the same instrument."  Fenderson v.

Fenderson, 685 A.2d 600, 607 (1996).  Because the estate was created by the same 1990 Deed,

and there interests vested when the 1990 Deed was filed, unity of time and title exists.  "Unity of

possession requires the tenants to have an undivided interest in the whole estate."  Id.  This unity

is satisfied as none of the Grantees were granted exclusive possession of the whole property.

     The entire case is centered around disagreements with the last unity: interest.  We find

that the 1990 Deed intended to grant Grantees equal interests in the Property since all three other

unities are present and there was a clear intent from the express language in the 1990 Deed to

create a joint tenancy.  See United States v. Craft, 535 U.S. 274, 280 (2002) ("[J]oint-tenants

---

[6] Under Pennsylvania law, there is a presumption that a conveyance or devise to two or more people creates a
tenancy in common, and not a joint tenancy, unless there is a clear intent to the contrary.  See Zomisky, 296 A.2d at
723.

have one and the same interest."). Nothing in the 1990 Deed indicates that the Grantees were intended to have separate and unequal interests; rather, the clear intent to create a joint tenancy indicates the Grantors intended the Grantees to have equal shares.

The case that Merritt relies upon, <u>Heatter v. Lucas</u>, 80 A.2d 749 (1951), is distinguishable from the case before us today. In <u>Heatter</u>, a farm had been deeded to "Francis Lucas, a single man, and Joseph Lucas and Matilda Lucas, his wife," with the habendum clause providing "to Have and to Hold the same unto and for the use of the said parties of the second part their heirs and assigns forever." <u>Id.</u> at 750. The Court held:

> In the instant case the two grantees are in fact husband and wife and the designation 'his wife' sufficiently imports an intention that they shall take as such. Further the conjunction 'and,' first used, is unnecessary if the parties were intended to take undivided one-third parts; the use of the word "and" separated the grantees into two units (1) Francis and (2) Joseph and Matilda . . . . Finally the designation of Francis Lucas as 'a single man' fortifies the conclusion that the deed had specific reference to the marital status of Joseph and Matilda Lucas; that they only took a one-half interest as tenants by the entireties.

<u>Id.</u> at 752.

Merritt suggests that the period after "Frederic F. Kersey and Lillie E. Kersey, his wife, tenants by the entireties," is similar to the "and" used in <u>Heatter</u>; therefore, the 1990 Deed intended to separate the Parents and the Children into two separate classes with each class receiving a 50% interest in the Property. (<u>See</u> Merritt's Mem. In Opp. to Sibling's Mot. for Summ. J. at 14-17.) If we were to accept this interpretation, it would not only conflict with the clear intention to create a joint tenancy, it would conflict with other language in the 1990 Deed where it appears all Grantees were modified by the term "joint tenants." The habendum clause of the 1990 Deed reads: "As to husband-and-wife Tenants by Entireties and as to parents and children as Joint Tenants with the Right of Survivorship." (<u>See</u> Merritt's Mot. for Summ. J., Ex.

10

A.)  Thus, the language of the 1990 Deed expressly includes the Parents and the Children as joint tenants and does not indicate an intent to create two distinct classes.  See Wright v. Misty Mountain Farm, LLC, 125 A.3d 814, 819 (Pa. Super. Ct. 2015) ("Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning.") (citations omitted).

     Besides the clear intent to create a joint tenancy among the five Grantees, the Heatter case is also distinguishable due to the amount of grantees involved.  The husband and wife in Heatter took 50% of the property only by default since there were only two owners of the property - the single man and the husband and wife as tenants by entireties.  Heatter, 80 A.2d at 751-52.  We agree with Siblings that this case does not stand for the proposition that a tenant by the entirety is always entitled to a 50% interest.  (See Siblings' Mem. In Opp. to Merritt's Mot. for Summ. J. at 3.)  There is nothing in the Heatter opinion that indicates that if more than two grantees were involved, the husband and wife would still have been entitled to a 50% interest. See generally Edel v. Edel, 424 A.2d 946 (Pa. Super. Ct. 1981) ("[W]henever property has been conveyed to a married couple and to a third party, the tendency in Pennsylvania has been to find that the one-half interest of the married couple, although held by the entireties as between themselves, is held in common in relation to the interest of the third party.") (internal citations and quotations omitted).  Additionally, unlike in the 1990 Deed, no language in Heatter suggested that there was an intent to create a joint tenancy.

     Therefore, our interpretation, and that suggested by Siblings and adopted by this Court, is that each Grantee was granted an equal interest in the Property pursuant to the 1990 Deed as a joint tenant with the right of survivorship.

11

**IV.**     <u>**CONCLUSION**</u>

     For the foregoing reasons, Siblings' Motion for Summary Judgment is granted while Merritt's Motion for Summary Judgment is denied.  Based on the language of the 1990 Deed, we find that there was a clear intent to create a joint tenancy among all five tenants: Frederic and Lillie as one entity due to their relationship as tenants by the entireties, and Michael, Morris, Mona Lisa, and Merritt.  Consequently, we find that each Grantee is entitled to an equal twenty percent (20%) share in the net proceeds from the sale of the Property.

     An appropriate Order follows.